UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMRA MILLARD,

        Plaintiff,                                              Hon. Richard Alan Enslen

v.                                                          Case No. 1:04-CV-464

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

        The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 42 years of age at the time of the ALJ's decision. (Tr. 15). She earned a General Educational Development (GED) diploma and worked previously as a laundry attendant, housekeeper, assistant manager, and general laborer. (Tr. 15, 113, 120-24).

Plaintiff applied for benefits on January 25, 2001, alleging that she had been disabled since July 23, 1999, due to degenerative disc disease, herniated disc, and asthma. (Tr. 77-78, 107, 342-44). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 29-76, 346-56). On December 11, 2002, Plaintiff appeared before ALJ Adrian Sannier, with testimony being offered by Plaintiff and vocational expert, Donald Heckler. (Tr. 384-421). In a written decision dated March 14, 2003, the ALJ determined that Plaintiff was not disabled. (Tr. 33-45). The Appeals Council subsequently remanded the matter for consideration of Plaintiff's obesity and alleged mental impairments. (Tr. 65-68).

On September 11, 2003, Plaintiff appeared before ALJ Lawrence Blatnik, with testimony being offered by Plaintiff, medical expert, Dr. Jeffrey Andert, and vocational expert, Heather Benton. (Tr. 422-75). In a written decision dated November 25, 2003, the ALJ determined that Plaintiff was not disabled. (Tr. 14-23). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 5-7). Plaintiff initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## **MEDICAL HISTORY**

On July 23, 1999, Plaintiff was taking clothes out of a washing machine when she began to experience "a burning in the mid low back region." (Tr. 161). X-rays of Plaintiff's lumbosacral spine, taken on August 18, 1999, revealed disc space narrowing at L5/S1, but otherwise revealed "good alignment and good maintenance of [the] facet joints." An MRI examination, performed the same day, revealed disc space narrowing at L5/S1, degenerative changes at L4-5 and L5/S1, and disc protrusion at L5/S1. (Tr. 161-62). However, there was "no evidence of compromise of neurologic structures." (Tr. 162).

On December 30, 1999, Plaintiff was examined by Dr. Mark Krinock. (Tr. 161-64). Plaintiff exhibited full range of spinal motion without evidence of spasm. (Tr. 163). Straight leg raising and Tinel's sign[1] were both negative. *Id.* Romberg's sign[2] was negative and an examination of Plaintiff's extremities was unremarkable. (Tr. 163-64). Plaintiff was able to heel/toe walk and exhibited no gait-related abnormalities. (Tr. 164). Dr. Krinock diagnosed Plaintiff with (a) low back pain, (b) degenerative disc disease at L4-5 and L5/S1, and (c) lumbosacral spondylosis at L4-5 and L5/S1. Noting that Plaintiff had previously made an "incomplete attempt" at physical therapy, the doctor instructed Plaintiff to participate in aqua therapy. *Id.*

On March 22, 2000, Plaintiff participated in a bone scan, the results of which revealed the presence of "mild" degenerative facet disease at the lumbosacral junction. (Tr. 159).

---

[1] Tinel's test (or Tinel's sign) refers to a tingling sensation at the end of a limb produced by tapping the nerve at a site of compression or injury. This test is also used to detect the presence of carpal tunnel syndrome. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* T-140 (Matthew Bender) (1996); Frank L. Urbano, M.D., *Tinel's Sign and Phalen's Manuever: Physical Signs of Carpal Tunnel Syndrome*, Hospital Physician, July 2000 at 39.

[2] Romberg test is a neurological test designed to detect poor balance. *See* Romberg Test, available at http://www.mult-sclerosis.org/RombergTest.html (last visited on June 2, 2005). The patient stands with her feet together and eyes closed. The examiner will then push her slightly to determine whether she is able to compensate and regain her posture. *Id.*

On February 20, 2001, Plaintiff completed a report regarding her activities. (Tr. 128-30). Plaintiff reported that she can only walk "about 5 f[ee]t" before being forced to stop due to pain. (Tr. 128). Plaintiff also reported that she cooks, washes dishes, and washes laundry, but is unable to go shopping. (Tr. 129).

On July 14, 2001, Plaintiff participated in a consultive examination conducted by Dr. Allan McIntyre. (Tr. 166-69). Plaintiff reported that she was experiencing back pain which radiated to her extremities. (Tr. 166). Plaintiff stated that she experiences "increased pain after walking for prolonged periods of time such as shopping." She also reported experiencing asthma-related shortness of breath after walking only one-half block. *Id.* An examination of Plaintiff's extremities was unremarkable. (Tr. 167). Plaintiff exhibited "mildly reduced" range of motion in her cervical and dorsolumbar spine and "full" range of motion in her knees and ankles. (Tr. 168-69). The results of motor and neurological testing were unremarkable. (Tr. 168). Plaintiff "had no difficulty getting on and off the examination table, no difficulty heel [and] toe walking, no difficulty squatting, and no difficulty hopping." *Id.* Plaintiff also participated in a pulmonary function examination, the results of which were unremarkable. (Tr. 169).

On August 22, 2001, Plaintiff was examined by Anthony Elmore, a social worker with Summit Pointe Behavioral Health Resources. (Tr. 298-301). Plaintiff reported that she was depressed and experiencing difficulty sleeping. (Tr. 298). Plaintiff appeared depressed, but the results of a mental status examination were otherwise unremarkable. (Tr. 299-300). Elmore diagnosed Plaintiff with depression and rated her GAF score as 65. (Tr. 301). He recommended that Plaintiff "see doctor for medications for depression and possibly see a therapist to discuss family issues." (Tr. 300).

On September 26, 2001, Plaintiff was examined by Dr. William Mankel. (Tr. 285-88). Plaintiff reported that she was experiencing "a lot of life problems I can't deal with." (Tr. 285). Specifically, Plaintiff described the difficulties she was experiencing with her 17 year-old son. *Id.* Plaintiff appeared sad and anxious, but the results of a mental status examination were otherwise unremarkable. (Tr. 286-87). The doctor diagnosed Plaintiff with major depression and social anxiety disorder. (Tr. 287). Plaintiff's GAF score was rated as 55. *Id.* Plaintiff was prescribed anti-depressant medication. (Tr. 288).

On November 28, 2001, Plaintiff was examined by Dr. Mankel. (Tr. 293). Plaintiff reported that her "stressors at home remain a problem." The doctor reported that Plaintiff was suffering from mixed anxiety and depression. The doctor modified Plaintiff's medication regimen. *Id.* Later that day, Dr. Mankel received a telephone call from a pharmacy reporting that Plaintiff had presented a forged prescription. (Tr. 292). The doctor observed that Plaintiff may have a "substance abuse potential that I was not aware of." *Id.* Treatment notes indicate that Plaintiff was previously addicted to cocaine. (Tr. 290). Following this incident, Plaintiff discontinued treatment with Dr. Mankel. (Tr. 289-91).

On April 27, 2002, Plaintiff participated in an MRI examination of her left knee, the results of which revealed tears of the medial meniscus, degenerative narrowing of the medial joint compartment, and degenerative changes with subchondral cyst formation. (Tr. 174).

On May 22, 2002, Plaintiff underwent arthroscopic surgery on her left knee performed by Dr. Joseph Burkhardt. (Tr. 262). Specifically, the doctor performed a partial medial menisectomy. *Id.* During the operation, Dr. Burkhardt also discovered the presence of "bone on bone osteoarthritis in the medial compartment." (Tr. 275).

On May 29, 2002, Plaintiff was examined by Dr. Burkhardt. (Tr. 263). Plaintiff was able to weightbear on her left knee and the doctor observed no evidence of neurological abnormality. She was instructed to participate in physical therapy. *Id.* Following a June 13, 2002 examination, Dr. Burkhardt reported that Plaintiff had obtained "good results" from the surgery and was under "no restrictions." (Tr. 277).

On July 12, 2002, Plaintiff was examined by Dr. Burkhardt. (Tr. 276). Plaintiff reported experiencing "some intermittent grabbing and catching" in her knee which the doctor concluded was related to her osteoarthritis. The doctor noted, however, that Plaintiff's "meniscal problem is gone." *Id.*

Following an August 15, 2002 examination, Dr. Burkhardt reported that he expected Plaintiff to experience "progressive pain with the bone on bone arthritis in her left knee." (Tr. 275). The doctor concluded that while Plaintiff would eventually require knee replacement, he recommended that she participate in more conservative methods of treatment for the present. *Id.*

On September 11, 2002, Dr. Burkhardt administered to Plaintiff a Supartz[3] injection to treat her arthritis-related knee pain. (Tr. 274). Plaintiff received a second Supartz injection on October 9, 2002. (Tr. 270).

On October 8, 2002, Plaintiff telephoned her treating physician's office requesting a prescription for pain medication. (Tr. 312). Plaintiff stated that she "refuses" to take the medication prescribed by the doctor and instead wanted to receive a prescription for Vicodin.

---

[3] Supartz contains a substance similar to the synovial fluid that occurs naturally in the knee. *See* Supartz, available at, http://www.supartz.com/about jointfluidtherapy.asp (last visited on May 26, 2005). Supartz is injected into the knee joint to help lubricate the knee and reduce friction. *Id.*

Plaintiff's request was denied. Plaintiff also reported that she had discontinued taking another medication and that the doctor could "shove it up as far as it will go." *Id.*

On October 28, 2002, Plaintiff returned to Dr. Mankel, who diagnosed Plaintiff as suffering from bi-polar disorder for which medication was prescribed. (Tr. 283-84).

On June 20, 2003, Plaintiff participated in a consultive examination conducted by Timothy Strang, Ph.D. (Tr. 331-35). The results of a mental status examination were unremarkable. (Tr. 333-34). Plaintiff was diagnosed with bi-polar disorder and her GAF score was rated as 50. (Tr. 335). Dr. Strang also completed a report regarding Plaintiff's ability to perform work-related activities. (Tr. 337-38). The doctor reported that Plaintiff's impairment did not impair her ability to understand, remember, and carry out instructions. (Tr. 337). The doctor reported that Plaintiff experienced "marked" difficulty responding appropriately to work pressures. (Tr. 338). He reported that Plaintiff experienced "moderate" difficulty interacting with co-workers and responding appropriately to changes in routine. Finally, the doctor reported that Plaintiff suffered only "slight" difficulty interacting appropriately with the public or supervisors. *Id.*

At the administrative hearing, Plaintiff testified that she can walk 75 feet, stand for 20-30 minutes, and sit for 20-30 minutes. (Tr. 440-41). She was unsure how much she can lift, but noted that she can lift and carry two grocery bags, one in each arm. (Tr. 441). Plaintiff testified that aside from trying to wash dishes she is unable to perform any household chores. (Tr. 446). She reported that she is forced to elevate her leg "usually all day" and "most of the night." (Tr. 447). Plaintiff testified that she experiences mood swings every day. (Tr. 448).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[4] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ found that Plaintiff suffers from the following severe impairments: status post medial meniscus tear of the left knee with partial medial meniscectomy, obesity, chronic obstructive pulmonary disease, and depression/bipolar disorder. (Tr. 16). The ALJ determined that these impairments, whether considered alone or in combination, fail to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P,

---

[4] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

Appendix 1. *Id.* The ALJ further determined that there existed a significant number of jobs which Plaintiff could perform despite her limitations. (Tr. 18-21). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) she can lift ten pounds occasionally and lesser amounts frequently, (2) she can stand or walk up to two hours in an 8-hour day with no prolonged walking or standing more than 30 minutes at one time, (3) she can sit for six hours in an 8-hour workday with the ability to stand at her option for up to 10 minutes with sitting for 30 minutes, (4) she requires a sit/stand option, (5) she can only occasionally

climb, and (6) she must avoid exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 19). With respect to Plaintiff's mental impairments, the ALJ further determined that Plaintiff retains the capacity to perform unskilled, nonstressful work that involves only minimal interaction or contact with others, and does not require independent decision-making or use of judgment. *Id.* After reviewing the relevant medical evidence, the undersigned concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff could no longer perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Heather Benton.

The vocational expert testified that there existed approximately 7,400 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 463-65). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d

1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

a. The ALJ Properly Discounted Plaintiff's Subjective Allegations

The ALJ concluded that Plaintiff's subjective allegations of pain and limitation were not "completely credible." (Tr. 21). Plaintiff asserts that the ALJ improperly discounted her subjective allegations. She further asserts that if properly evaluated, her subjective allegations establish that she is, in fact, disabled.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony") (citations omitted). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

It is not disputed that Plaintiff suffers from severe impairments. However, as the ALJ properly concluded, "there is paucity of objective medical evidence of record to document the existence of any medically determinable impairment that possibly could cause the severe, totally disabling symptomatology that is alleged." (Tr. 21). In other words, the objective medical evidence

does not support Plaintiff's assertion that her impairments are "of such a severity that [thay] can reasonably be expected to produce the alleged disabling pain." This conclusion is further supported by Plaintiff's reported activities and the fact that none of Plaintiff's care providers have imposed on her limitations which are inconsistent with the ALJ's RFC determination. In sum, there exists substantial evidence to support the ALJ's credibility determination.

b. The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations, to which the vocational expert indicated that there existed approximately 7,400 such jobs. Because there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon her response thereto.

## CONCLUSION

As articulated herein, the Court concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date:  June 6, 2005                     /s/ Ellen S. Carmody
                                                      ELLEN S. CARMODY
                                                     United States Magistrate Judge